## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

  Plaintiff,

v.

DOMINIQUE EMANUEL TYSON (01),

  Defendant.

Case No. 13-40090-01-DDC

### MEMORANDUM AND ORDER

  This matter comes before the court on pro se[1] prisoner Dominique Tyson's Motion for Compassionate Release (Doc. 102). The government responded. Doc. 104. Mr. Tyson replied. Doc. 105.[2] For reasons explained below, the court must dismiss Mr. Tyson's motion without prejudice for lack of subject matter jurisdiction. The court also denies Mr. Tyson's Motion to Appoint Counsel (Doc. 106).

### I.  Background

  On December 8, 2014, Mr. Tyson pleaded guilty to one count of sex trafficking of children, violating 18 U.S.C. § 1591(a). Doc. 60; Doc. 1 at 1. On July 28, 2015, the court sentenced Mr. Tyson to 168 months' imprisonment and 5 years of supervised release. Doc. 86 at

---

[1] Because Mr. Tyson proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.* The court appreciates Mr. Tyson's efforts to write his Reply in its "best legal form" without the assistance of counsel. *See* Doc. 105 at 1.

[2] The court acknowledges Mr. Tyson's note about his struggles to file his Reply successfully. *See* Doc. 105 at 2. The Clerk of the Court dockets the parties' mailed filings promptly after they arrive. The court cannot discern why Mr. Tyson's first mailing of his Reply was not delivered successfully.

2; Doc. 87 at 2–3.  He is incarcerated at FCI Greenville and is scheduled for release on June 28, 2025.  *See* Dominique E. Tyson, Register No. 23548-031, https://www.bop.gov/inmateloc/ (last visited Dec. 11, 2020).

In May 2020, Mr. Tyson filed a motion seeking a sentence modification under the CARES Act[3] and 18 U.S.C. § 3582(c)(1)(A) due to the COVID-19 pandemic.  Doc. 96 at 1–2. The court denied that motion for lack of subject matter jurisdiction because the court lacks jurisdiction to order home confinement under the CARES Act, and the court concluded that it lacked jurisdiction to decide his motion under § 3582(c)(1)(A) because Mr. Tyson failed to satisfy the relevant statutory exhaustion requirements.  Doc. 100 at 3–5.

Mr. Tyson since has filed another motion and now moves under § 3582(c)(1)(A)(i) to request a sentence reduction given the risks that COVID-19 presents to his health.  Doc. 102 at 1. As explained below, the court must again dismiss Mr. Tyson's motion for two independent reasons.  *First*, the motion fails to show either that he has exhausted his administrative rights to appeal or the lapse of 30 days from the warden's receipt of a compassionate release request. *Second*, the motion fails to show that extraordinary and compelling reasons warrant a sentence reduction.

## II.    Legal Standard

"'Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute[.]'"  *United States v. James*, 728 F. App'x 818, 822 (10th Cir. 2018) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "After entry of final judgment, a district court has jurisdiction only to the extent permitted by statute or rule."  *Id.*  The federal criminal offense jurisdiction statute—18 U.S.C. § 3231—"by

---

[3]      Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (enacted Mar. 27, 2020).

itself doesn't give the district court jurisdiction over all post-conviction motions[.]" *Id.* (citations and quotation marks omitted).

Title 18 U.S.C. § 3582(c) announces a general rule that the "court may not modify a term of imprisonment once it has been imposed[.]"  But the statute also recognizes certain exceptions. Even after it has imposed a term of imprisonment, the sentencing court may modify that term "upon motion of the defendant after [1] the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A).

"Under that statute, a district court may reduce a sentence if, after considering any applicable sentencing factors in 18 U.S.C. § 3553, it finds 'extraordinary and compelling reasons warrant such a reduction' and the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'"  *United States v. Haynes*, 827 F. App'x 892, 895 (10th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

"Unless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction to consider [the defendant's] request." *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (citations and internal quotation marks omitted) (vacating district court's Order denying motion under § 3582(c)(1)(A) and remanding with instructions to dismiss the motion for lack of jurisdiction); *see also United States v. Harris*, No. 15-40054-01-DDC, 2020 WL 7122430, at *1–2 (D. Kan. Dec. 4, 2020) (discussing our Circuit's reading of § 3582(c) as jurisdictional).

Mr. Tyson asked this court to grant him relief under § 3582(c) once before.  *See* Doc. 96 at 1.  The court dismissed Mr. Tyson's earlier motion (Doc. 96) on jurisdictional grounds for

failure to exhaust.  *See* Doc. 100 at 4–5.  Before proceeding to the merits of Mr. Tyson's new motion, the court now considers whether he satisfies § 3582(c)(1)(A)'s requirement of exhaustion or lapse.

### III.   Discussion

#### A.   Exhaustion or Lapse under 18 U.S.C. § 3582(c)(1)(A)

An inmate seeking compassionate release under § 3582(c)(1)(A) must first "request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies."  *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (citations omitted); *see also* 18 U.S.C. § 3582(c)(1)(A).  The court properly may consider a defendant's motion under § 3582(c)(1)(A) filed after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"  18 U.S.C. § 3582(c)(1)(A).  "In other words, if a warden lets 30 days pass without responding to an inmate's request under § 3582(c)(1)(A), the inmate may proceed directly to file a motion with the court who imposed the prison term." *Harris*, 2020 WL 7122430, at *2–3 (discussing competing readings of "the lapse of 30 days"). But "if the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court."  *United States v. McIntosh*, No. CR 11-20085-01-KHV, 2020 WL 5747921, at *2 (D. Kan. Sept. 25, 2020), *reconsideration denied*, No. CR 11-20085-01-KHV, 2020 WL 6270918 (D. Kan. Oct. 26, 2020) (citations omitted).

Among other issues, Mr. Tyson's motion raises the question whether informal requests initiate the administrative remedy process for purposes of exhaustion or lapse.  The court first recites Mr. Tyson's alleged efforts to seek an administrative remedy, and then considers whether those actions suffice both to initiate and exhaust certain remedies as the statute requires.

### 1.  Mr. Tyson's Requests for a Compassionate Release Motion on his Behalf

Mr. Tyson includes with his motion several emails and documents.  These attachments reveal his efforts to secure relief from within FCI Greenville before filing this motion.  *See* Doc. 102 at 18–24.  He sent four emails requesting relief between May 21, 2020, and June 13, 2020. *Id.* at 18–21.  He also submitted an "informal resolution attempt" document around May 31, both (1) to complain about BOP's failure to respond to his emails and conversations with staff, and (2) to request again his release from custody.  *See id.* at 23.  The "informal resolution attempt" form directs inmates whose complaint does not receive formal resolution to continue to pursue an administrative remedy.  *See id.*  The form directs inmates to pursue further remedies by forwarding the original "informal resolution attempt" document with a request for administrative remedy to the Warden's Office.  *See id.*  Mr. Tyson followed this directive by submitting a Request for Administrative Remedy document dated June 1, 2020.  *Id.* at 23.  BOP received his request on June 9, 2020.  *Id.* at 22.  On June 17, Mr. Tyson received a message from the Administrative Remedy Coordinator acknowledging BOP's receipt and noting that Mr. Tyson was due to receive a response by June 29, 2020.  Doc. 102 at 22.

On June 20, FCI Greenville's warden responded to Mr. Tyson's request for administrative remedy.  *Id.* at 25.  The response notified Mr. Tyson that his "request for compassionate release/reduction in sentence (RIS) cannot be considered because" he failed to "address all of the necessary information dictated by P.S. 5050.50 and the new stipulations set forth by the First Step Act."  *Id.*  The response document explained the deficiencies in Mr. Tyson's request and advised Mr. Tyson to submit a request that includes "details such as proposed release plans, including where you will reside, how you will support yourself, and, if the basis for the request involves your health, information on where you will receive medical

treatment, and how you will pay for such treatment" so that his request could be considered. *Id.* The warden's response also notified Mr. Tyson of his right to appeal the decision within 20 days after the date of the response. *Id.*

The court now considers whether this effort to secure an administrative remedy satisfies § 3582(c)(1)(A)'s exhaustion or lapse requirements.

### 2.  Analysis

Mr. Tyson asserts that he "has exhausted his available administrative remedies through the BOP and sent more th[a]n a couple E-mails requesting relief under compass[i]onate release and or the [CARES Act] to the Warden Williams of FCI Greenville," and that "Warden Williams has still not responded to the request sent through electronic mail." Doc. 102 at 4. He also asserts that he "entered the E-mail requests on [May 21, 2020] and today['s] date is [August 9, 2020] and a copy of such E-mails request and other administrative remedies are at the end of this motion for [proof] of exhaustion of request to the warden of FCI Greenville." *Id.*

The government responds that Mr. Tyson's correspondence with FCI Greenville staff included in his motion suggests that Mr. Tyson has "still yet to fully and properly exhaust his available administrative remedies" because "the Warden rejected the defendant's request for compassionate release on grounds that he failed to 'address all of the necessary information dictated by P.S. 5050.50 and the new stipulations set forth by the First Step Act.'" Doc. 104 at 8 (quoting Doc. 102 at 25). While the government stops short of confronting Mr. Tyson's exhaustion argument directly or fully, the court agrees with its conclusion: Mr. Tyson has not demonstrated either that he has exhausted his administrative rights to appeal or the lapse of 30 days without response from the warden.

An inmate seeking compassionate release under § 3582(c)(1)(A) must first "request that the BOP file a compassionate-release motion on his behalf . . . ." *Springer*, 820 F. App'x at 791. That request must include certain minimum content. *See* 28 C.F.R. § 571.61 (2013) (describing how to initiate request under § 3582(c)). And BOP Program Statement 5050.50 (interpreting 28 C.F.R. § 571.61) notes that a "request for a RIS is considered 'submitted' for the purposes of [18 U.S.C. § 3582(c)(1)], when received by the Warden in accordance with this section." BOP Program Statement 5050.50 (2019) (detailing how to initiate a request for compassionate release and BOP procedures for processing requests).[4] Mr. Tyson emphasizes that he emailed the warden to seek relief. *See* Doc. 102 at 4. Neither Mr. Tyson nor the government addresses clearly whether an email request complies with 28 C.F.R. § 571.61(a).[5]

Mr. Tyson asserts without support that an inmate's internal request need not be a "formal request," and a "copout" suffices as a written request under the statute. *See* Doc. 105 at 4. "The term 'copout' refers to an informal request made by an inmate to a staff member at a correctional facility." *West v. Shultz*, No. 1:12-CV-1004, 2018 WL 4385181, at *1 n.1 (M.D. Pa. Sept. 14, 2018). Yet Mr. Tyson does not suggest that his emails here were copouts. *See* Doc. 105 at 4.

But even if the court assumes that an email is a valid medium for submitting an internal request for relief at Mr. Tyson's institution, his emails fall short of providing the information that

---

[4]     BOP P.S. 5050.50 is accessible at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

[5]     The court notes that Mr. Tyson's "Documentation of Informal Resolution Attempt" (Doc. 102 at 23) provides that BOP "Program Statement No. 1330.18, Administrative Remedy Program, (January 6, 2014), requires, in most cases, that inmates attempt informal resolution of grievances prior to filing a formal written complaint. This form shall be used to document your efforts towards informally resolving your grievance." Doc. 102 at 23. "Each Warden shall establish procedures to allow for the informal resolution of inmate complaints." 28 C.F.R. § 542.13(a). The parties fail to explain whether FCI Greenville's warden established procedures permitting inmates to seek compassionate release as informal resolutions via email as Mr. Tyson did.

28 C.F.R. § 571.61 requires.  *Compare* 28 C.F.R. § 571.61(a) ("The inmate's request shall at a minimum contain . . . [p]roposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment."), *with* Doc. 102 at 18–21 (emails lacking information about Mr. Tyson's post-release plans other than noting that he "would rather take [his] chances at home with [his] family on home confinement" and "ha[s] a home plan[] to go home to [upon] release.").  Because his email requests lack the minimum content prescribed by § 571.61, the BOP does not consider those requests "submitted."  *See* BOP Program Statement 5050.50 at 3 ("A request for a RIS is considered 'submitted' for the purposes of [18 U.S.C. § 3582(c)(1)], when received by the Warden in accordance with [§ 571.61].").[6]  Mr. Tyson's emails were not received in accordance with § 571.61 and thus they cannot serve as a basis for exhaustion or lapse, even if BOP failed to respond to them directly.[7]

When Mr. Tyson used a more official channel to submit an internal request for compassionate release, he received a direct and timely response.  *See* Doc. 102 at 23–25.  The

---

[6]     In *Saldana*, our Circuit recently examined a different provision within BOP Program Statement 5050.50.  *See Saldana*, 807 F. App'x at 819.  *Saldana* cited *Reno v. Koray*, 515 U.S. 50, 61 (1995) for its holding that BOP program statements are entitled to "some deference" when they reflect a "permissible construction of the statute[.]" *Id.*  Given § 571.61's minimum requirements for an inmate's request to the warden for a motion under § 3582(c)(1)(A), the court concludes that BOP Program Statement 5050.50's construction of 28 C.F.R. § 571.61 permissible.  Consistent with *Saldana* and *Koray*, the court thus gives some deference to the BOP's view that an inmate's request to the warden "is considered 'submitted' for the purposes of [18 U.S.C. § 3582(c)(1)], when received by the Warden in accordance with this section."

[7]     The court notes that BOP responded to the concerns and requests that Mr. Tyson raised in his emails within 30 days, even if it was not those emails that triggered BOP's response.  Mr. Tyson's earliest emails seeking relief are dated May 21, 2020.  Doc. 102 at 18–19.  On June 20, 2020, the BOP responded to Mr. Tyson's Request for Administrative Remedy (#1025378-F1) (*id.* at 24) dated June 1, 2020 and received by BOP on June 9, 2020.  *See id.* at 25 (Response to Request for Administrative Remedy).  Mr. Tyson thus received an *indirect* response to his May 21, 2020 emails within the 30-day response period that § 3582(c)(1)(A) prescribes.

warden did not grant Mr. Tyson the relief he requested.  *Id.* at 25.  The warden's response explained that Mr. Tyson's request still lacked necessary information.  *See id.*  But the warden's response invited Mr. Tyson to resubmit a request or pursue his right to appeal.  *See id.* ("Submit a request to staff to the warden with the above information and your request will be considered" or "[i]f you are not satisfied with this decision, you may appeal to the Regional Director . . . .").

But Mr. Tyson's motion asserts nothing about appealing or refiling a corrected request in effort to exhaust those administrative rights to appeal.  *See id.* at 4.  His failure to allege that he appealed denial of his official request precludes any possibility that his denied request can serve as a basis for exhaustion.  *See United States v. Young*, No. CR 10-20076-01-KHV, 2020 WL 6384362, at *3 (D. Kan. Oct. 30, 2020) (holding that defendant "has not shown that he has fully exhausted all administrative appeal rights" where in "the denial letter, the warden advised defendant that he had the right to file an administrative appeal, but he did not do so" and "defendant does not allege that the warden failed to respond within 30 days of his request and he did not appeal the warden's denial of his request"); *see also United States v. Talk*, No. 1:15-CR-2220 WJ-1, 2020 WL 4430406, at *3–4 (D.N.M. July 31, 2020) (denying motion for compassionate release where, because "it appears that the warden timely denied Defendant's request within the 30 days allowed by § 3582(c)(1)(A), Defendant cannot file for relief directly with this Court.  Rather, having received a denial from the warden, Defendant must appeal the warden's decision through the BOP administrative remedy process in order to fully exhaust." (citations omitted)).

And Mr. Tyson's email theory proves no more useful.  It asserts merely that the warden's failure to respond to Mr. Tyson's May 21, 2020 emails before filing this motion on August 12, 2020 proves exhaustion or lapse.  *Id.* at 4–5.  But those emails failed to initiate the administrative

remedy process for reasons discussed above.  So, the warden's failure to respond to them cannot serve as the basis for exhaustion or lapse.

Mr. Tyson's motion and attached documents fail to show that he yet has exhausted his administrative rights to appeal.  So, Mr. Tyson has shown neither (1) that he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his behalf nor (2) that 30 days have passed without the warden responding to Mr. Tyson's qualifying request for a motion on his behalf.  18 U.S.C. § 3582(c)(1)(A).  His motion fails to show that the court has subject matter jurisdiction under § 3582(c)(1)(A).  So, the court must dismiss it.

### B.  Extraordinary and Compelling Reasons

Even if Mr. Tyson had not failed to show exhaustion or lapse, the court still would lack subject matter jurisdiction because he fails to present a qualifying reason for compassionate release under § 3582(c)(1)(A).  *See Saldana*, 807 F. App'x at 820–21.  This statute authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's applicable policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction,"[8] (2) "[t]he defendant is not a

---

[8]     Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D).  *Id.* § 1B1.13 application note 1. Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify him for compassionate release, if (i) he is suffering from a terminal illness, or (ii) he is suffering from a serious physical or medical condition that "substantially diminishes" his ability to provide self-care within the prison and he is not expected to recover.  *Id.* § 1B1.13 application note 1(A).  Subdivisions (B) and (C) apply to age and family circumstances not invoked here.  Subdivision (D) supplies a catchall provision:  it applies when as determined by the "Bureau of Prisons, there exists in the defendant's case an

danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13.

Mr. Tyson asserts that he has both kidney problems and allergies that cause dizziness and breathing issues that interfere with his sleep.  Doc. 102 at 7.  The government responds that "the defendant does not present this Court with any medical documentation that would constitute extraordinary and compelling reasons for consideration of release."  Doc. 104 at 14.  The court first considers Mr. Tyson's assertions about his kidney health, then considers his allergies.

### 1. Whether Mr. Tyson's Kidney Condition During the COVID-19 Pandemic is "Extraordinary and Compelling"

Mr. Tyson asserts that he "has minor kidn[e]y problems[.]"  Doc. 102 at 7.  But he includes no medical records with his motion.  *See generally id.*  The government notes that Mr. Tyson's "medical records fail to confirm any kidney related problems . . . ."  Doc. 104 at 14. The absence of medical documentation to support his alleged kidney problems presents a strong headwind for Mr. Tyson's motion.  *See United States v. McCullough*, No. 04-20006-01-JWL, 2020 WL 4436387, at *2 (D. Kan. Aug. 3, 2020) (denying motion under § 3582(c)(1)(A) where "there is simply no evidence before the court suggesting that the defendant presently has any health condition that might increase his risk of harm in the event that he contracts the virus" because "[n]either party has submitted the defendant's medical records for the court's review."); *see also United States v. Gonzalez*, 467 F. Supp. 3d 1075, 1080 (D. Colo. June 3, 2020) (denying motion under § 3582(c)(1)(A) because "the fact that [defendant's] claims are unsupported by evidence regarding the severity of his [medical condition] prevents the Court from finding that this medical condition constitutes an extraordinary or compelling circumstance warranting early

---

extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  *Id.* § 1B1.13 application note 1(D).

release" where defendant "does not provide any documentation corroborating his [medical condition], such as medical records, and has not submitted any additional information concerning" the condition).

Moreover, the government notes that "the Department of Justice has, consistent with the Centers for Disease Control (CDC), identified certain risk factors that place inmates at higher risk of complications from COVID-19." Doc. 104 at 13 & n.8. This list of risk factors does not include *minor* kidney problems. *See id.* at 13 n.8 (including "chronic kidney disease being treated with dialysis"). The CDC warns that people with *chronic kidney disease* "are at increased risk of severe illness from the virus that causes COVID-19[.]" CDC, People with Certain Medical Conditions (updated Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 11, 2020). Mr. Tyson does not assert that his minor kidney problems are due to "chronic kidney disease." *See* Doc. 102 at 7. And our court has held previously that defendant's asserted kidney failure did not demonstrate extraordinary and compelling reasons warranting compassionate release. *See United States v. Scuderi*, No. 12-10059-EFM, 2020 WL 5231318, at *2 (D. Kan. Sept. 2, 2020) (denying motion to dismiss under § 3582(c)(1)(A) where defendant asserted "that his medical ailment[] of kidney failure . . . would be impacted by the contraction of COVID-19."). The court notes that other district courts within our Circuit have concluded that certain kinds of kidney disease "fit[] squarely within the Sentencing Commission's definition of what constitutes 'extraordinary and compelling reasons' warranting his compassionate release." *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020) (granting motion for compassionate release where defendant had "end-stage kidney failure"). But the severity of kidney disease at issue in *Cotinola* differed drastically from the condition that Mr.

Tyson describes here.  *Compare* Doc. 102 at 7 ("minor" kidney problems), *with Cotinola*, 2020 WL 2526717, at *3 ("the record shows . . . that in order to function and survive in the BOP, [defendant] had to be transferred to a federal medical center, where he is dependent on constant medical care including dialysis three times a week, the daily administration of as many as 14 medications, and regular consultations and lab work to monitor his condition.").

Here, Mr. Tyson's unsupported allegations of minor kidney problems do not present an extraordinary and compelling reason under § 3582(c)(1)(A)(i).  *See United States v. McDaniel*, No. 07-20168-22-JWL, 2020 WL 5118108, at *2 (D. Kan. Aug. 31, 2020) (denying motion for compassionate release because "when [defendant's] medical records are viewed in tandem with the CDC guidelines, the evidence does not support a finding that [defendant] is at a higher risk for severe illness due to COVID-19").

### 2. Whether Mr. Tyson's Allergy Condition During the COVID-19 Pandemic is "Extraordinary and Compelling"

In addition to kidney problems, Mr. Tyson also asserts that he suffers from allergies. Doc. 102 at 7.  He alleges "al[l]ergy problems that at times bring slight dizz[i]ness to w[h]ere he has to s[i]t down at times and most importantly the slowness of breathing when he sleeps, to w[h]ere at times he has to get up and turn or move or stand up before he [feels] comfortable to go back to sleep, due to unknown breathing problems the facility wouldn't attend to."  *Id.*  The government responds that Mr. Tyson's medical records "further show that he does not suffer from any known allergies."  Doc. 104 at 14 (citing Mr. Tyson's BOP Health Services record noting "No Known Allergies" (Oct. 1, 2015)).  The allergy report that the government includes in its Response is five years old and thus does not rule out the possibility that Mr. Tyson's allergy condition emerged more recently.  But Mr. Tyson provides the court with no medical records suggesting that he suffers from allergies—newly emerged or otherwise.  *See* Doc. 102.

As discussed above, courts have denied motions for compassionate release where the defendant failed to provide evidentiary support for the existence and severity of the alleged medical condition.  *See, e.g.*, *McCullough*, 2020 WL 4436387, at *2; *United States v. Wadley*, No. 2:18-CR-00408-DAK, 2020 WL 3270880, at *2 (D. Utah June 17, 2020) (concluding that defendant failed to establish extraordinary and compelling circumstances under § 3582(c)(1)(A) where asthmatic defendant's "medical records do not indicate that his asthma is moderate or severe").

Even if Mr. Tyson had not failed to provide evidence of his allergies, the condition he describes still would fail to satisfy § 3582(c)(1)(A)(i).  Allergy problems are not found on the CDC's list of COVID-19 risk factors.  *See* CDC, People with Certain Medical Conditions (updated Dec. 1, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 11, 2020).  And our court has held that a seasonal allergy condition that causes shortness of breath during the COVID-19 pandemic does not present an extraordinary and compelling reason that warrants compassionate release.  *See United States v. Franco*, No. 14-10205-EFM, 2020 WL 5548819, at *1–2 (D. Kan. Sept. 16, 2020) (denying motion under § 3582(c)(1)(A) where defendant alleged that "he suffers from seasonal allergies that cause shortness of breath" because this "condition does not constitute an underlying health condition that would make him more susceptible to severe complications if he were to contract COVID-19").

Neither the provided medical records nor the DOJ and CDC guidance allows the court to conclude that Mr. Tyson's alleged medical conditions, individually or collectively, present an extraordinary and compelling reason warranting compassionate release.

### B.  Mr. Tyson's Conduct Since Sentencing

The court notes that Mr. Tyson shares evidence of his rehabilitation while serving his sentence.  Doc. 105 at 4.  He discusses his lack of disciplinary reports and steady employment in the BOP.  *Id.*  He also lists the various educational coursework and programs that he has utilized to educate himself.  *Id.*  These positive changes that Mr. Tyson has made are pieces of information that the court may consider when applying the § 3553(a) sentencing factors to a proposed sentence modification.  *See* 18 U.S.C. § 3553(a)(1) ("history and characteristics of the defendant").  But Congress has authorized the courts to modify a sentence under 18 U.S.C. § 3582(c)(1)(A)(i) only where qualifying "extraordinary and compelling reasons" exist.  Mr. Tyson's motion fails to show exhaustion or lapse under § 3582(c)(1)(A).  The motion also fails to show that Mr. Tyson's medical conditions meet the statutory standard.  So, the court lacks subject matter jurisdiction to consider his motion.  The court is thus unable to reach the § 3553(a) analysis that would allow the court to consider, among other things, Mr. Tyson's admirable commitment to personal development and education while incarcerated.

### IV.    Motion to Appoint Counsel

Mr. Tyson attaches to his pro se Reply a note that the court construes liberally as a motion to appoint counsel.  *See* Doc. 106 at 1.  "There is no constitutional right to counsel beyond the direct appeal of a criminal conviction[.]"  *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008); *see also United States v. Campos*, 630 F. App'x 813, 816 (10th Cir. 2015) ("No right to counsel extends to a § 3582(c)(2) motion.").  When exercising its "broad discretion" to decide whether to appoint counsel to an indigent litigant, the district court "should consider a variety of factors, including the merits of the litigant's claims, the nature of the factual issues

raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).

After considering Mr. Tyson's ability to present his claim for compassionate release, the nature of the claim's factual issues, the claim's merits, and the complexity of its legal issues, the court concludes that the appointment of counsel is not warranted here. Mr. Tyson's motion also fails to assert that he is indigent and provide the court with evidence showing indigency. *See* Doc. 106 at 1. The court thus denies Mr. Tyson's Motion to Appoint Counsel (Doc. 106).

## V.  Conclusion

Mr. Tyson's Motion for Compassionate Release (Doc. 102) suffers from at least two independent defects that preclude subject matter jurisdiction.[9] *First*, the motion fails to show either that he exhausted his administrative rights to appeal or the lapse of 30 days from the warden's receipt of a compassionate release request. *Second*, Mr. Tyson's alleged combination of minor kidney problems and allergy symptoms amid the COVID-19 pandemic, unsupported by any medical documentation, does not present an extraordinary and compelling reason that could warrant a sentence reduction under § 3582(c)(1)(A)(i). The court thus dismisses the Motion for Compassionate Release without prejudice for lack of subject matter jurisdiction.

And given the merits of Mr. Tyson's claims, the nature of the facts and legal issues here, and Mr. Tyson's ability to litigate those issues, the court denies his Motion to Appoint Counsel (Doc. 106).

---

[9]      Given the lack of subject matter jurisdiction, the court does not consider whether reducing Mr. Tyson's sentence to time served under § 3582(c)(A)(1) would be appropriate given 18 U.S.C. § 3553(a)'s sentencing factors.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Dominique Emanuel Tyson's Motion for Compassionate Release (Doc. 102) is dismissed without prejudice for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED THAT** defendant's Motion to Appoint Counsel (Doc. 106) is denied.

**IT IS SO ORDERED.**

**Dated this 11th day of December, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

17